May it please the Court, my name is Peter Canaris. I represent Axis Surplus Lines Insurance Company in this matter. In this case, Axis declined coverage under a property insurance contract for a hail damage claim. After careful investigation, the adjustment team followed the science and determined that while there was hail damage, which is not disputed, the hail storm occurred in the 2020-2012-2013 timeframe, five or six years before the effective dates of the insurance contract. Mr. Canaris, before you get too far into this, can we talk about jurisdiction? Yes. Your jurisdictional statement said this is an appeal from a final judgment of the district court which disposes of all parties' claims. That's not true, is it? Disposes of the counterclaim, Your Honor. Not all claims? Not all claims, Your Honor. This is an interlocutory appeal, isn't it? Yes, Your Honor. All right, so why was there no discussion? I understand there's a 54B certification. Yes. Why was there no discussion about this? Because the practical effect of the court's ruling is to allow the appraisal panel to decide the coverage issue. Well, what would be so beneficial for us to take this case up now when I think ultimately there's going to be, I mean, it's not going to be a final judgment. There's going to be a subsequent judgment. Why is it, why is it, and I read the district, and the district court gave some analysis, but I'd like to hear yours. Why is it, why should, why is the 54B certification proper here? Well, the trial court found below that we would not need to engage in an unnecessary appraisal. The parties want the time and expense of putting on evidence. And the evidence in that appraisal will be the same evidence that we would in contesting coverage, i.e., when the storm happened. Did it predate the effective dates of the policy? And more importantly, what are the known loss doctrine applies here? Did the insured know of the damage? So is the only thing that's going to be saved by us potentially having to hear two appeals, which we generally try to avoid, right? Is the only thing that's going to be saved the cost of an appraisal? The cost, time, and expense of appraisal and putting on the same evidence twice. The parties would have to put on the same evidence twice, both in the appraisal and in the underlying action. The point here is that... Aren't records kept of the appraisal? And wouldn't you have a record fully developed that you could just stipulate as to the coverage question before the district court? That's a fair question, Your Honor. But generally, appraisals, there is no record. It's an informal hearing. The parties have to agree to have a court reporter put together a transcript. It's not an arbitration. It's a quasi-arbitration proceeding. And really, the two appraisers can come to a conclusion among themselves without even including an umpire. They only go to a third-party selection of an umpire if they can't agree on the amount of loss. And our point here is this is not simply an amount of loss determination. It's not an incident. Determining whether something is hail damage causation is certainly permissible under the Quaid decision. But this case is not about whether something is hail damage. AXIS has conceded that there's hail damage to the roof. What this case is about is when did the hail damage happen and when did the hailstorm that produced it happen? And that happened back in the 2012-2013 timeframe. And also that the policyholder knew about it because they made a claim for it in 2016 and at the time did an inspection and agreed with AXIS at 2016 that this was hail damage that was not from a storm in 2016, but earlier. If I could go to the Quaid decision, if I could for a second. The trial court in Apelli-Condor have mistakenly expanded the holding of the Minnesota Supreme Court in Quaid well beyond its reasoning to allow an appraisal panel to decide the ultimate question of liability. Was there a covered event of loss within the policy period? In oral argument below, Condor conceded in a question to the trial court stating whether or not the loss falls within a policy period is a coverage question. And then leaps to the conclusion that under Quaid it is the job of the appraisers and not the jury or the court to find out when the loss happened. Well, the court leapt to that conclusion based on the plain language of Quaid, which says, you know, in the insurance context, an appraiser's assessment of the amount of loss necessarily includes a determination of the cause of the loss. So whether the loss was 2014 or 2020, that's the cause of loss. Respectfully, Your Honor, and I have the Quaid decision here. It says we have held questions of fact of law which are involved as mere incidents. And that's the key to a determination of the amount of loss. And the incident and causation is whether it's hail damage. We're not contesting that it's hail damage. Determining when the storm happened and if it predated the policy by five or six years, that's not incident to the amount of loss. That's determining the ultimate question of liability. And importantly, the Quaid case sided to a 1928 opinion of the Supreme Court, Itasca. And in that, and both the Quaid and the Itasca courts reaffirm the principle that courts or a jury decide questions of law, not an appraisal panel. Appraisers decide damages. And if the question of law, and I'm quoting here from the opinion at 220 Northwest 2nd, 425 at 426, if the questions of law which are involved as mere incidents to a determination of the amount of loss do not go to the root of the action. The root of the action in this case is when did the loss happen and did it happen within the policy period. If it didn't happen within the policy period, it's not a fortuitous loss. How is any of this different than what happened in Quaid? I mean, you cite language, you know, isolated language. But I don't understand how anything in this case is at all different from the actual facts of Quaid. The actual facts of Quaid was that there was a storm that happened. And the insurance company agreed that three, I mean, all but three of the roofs were damaged by the storm. And the court concluded that the jury, I mean, the panel could decide whether the storm damaged the other buildings. So that's different than this case because we say that there was no event, none whatsoever that happened in our policy period. We declined coverage because it's the insurance burden to establish that there was a fortuitous covered event that happened within the policy period. And that dates all the way back to the shoot decision by the Minnesota Supreme Court in the 20s, which is often cited for the requirement of fortuity. And furthermore, we're saying that the known loss doctrine bars the claim because this is, in fact, the loss that Condor knew about. Mr. Canaris, just to be clear, because I think you said this, but I just want to make sure. In the district court below, your access denied that a storm struck these buildings at all during the policy period. Yes. And that's your argument why Quaid is not applicable because Quaid didn't, the insurance company there didn't deny, at least with respect to all the buildings, that there was an event in the covered period, right? That's one of the two distinctions. And is that what makes this case more like Zelfie than Quaid? Is that the distinction? Yes, that's what makes it by Zelfie. But I want to go one step further. In Quaid, the question was whether or not the court said that the panel could separate causation between what was hail damage and what was not hail damage. There, it wasn't a question of which storm caused the damage. It was whether it was lack of maintenance, which was an excluded peril. So the panel, in order to determine what was hail damage, could decide that question, causation. Was it hail damage? Here, access is saying, we know that there's hail damage. There's nothing for the panel to decide that's incident to appraisal, incident to the amount of loss. There's hail damage. What we're saying is it didn't happen in our policy period. There was no event that happened in our policy period that could have caused this damage. And that's a pure coverage issue for the court or the jury to decide. Okay, so if I understand right, the two cases, you have Zelfie and the subsequent case, that are both Minnesota Court of Appeals cases that are unpublished. Yes. Our job is to predict what the Minnesota Supreme Court would do. So tell me what's in Quaid that would get to the outcome you want that would help us predict what the Minnesota Supreme Court would do, other than these two unpublished Minnesota Court of Appeals cases. Well, I think we go back to the operative reasoning in Quaid. In Quaid, the court said that questions of causation that are incident to the determination of the amount of loss or damage are appropriate to resolve. So what are questions that are… The argument is that this is an incident to, right? No, this is an incident. And in Quaid, the court cited its earlier decision, Itasca, which was a 1928 decision, which reaffirmed the position that courts decide questions of liability. They decide questions of coverage. And if need be, they can go to a jury to address a fact issue if that comes into a play. It's not incident because Access denies that a storm occurred during the covered period. It's not incident because not only does it deny that there was not a storm that happened during the policy period, but that the policyholder knew that it had the damage as early as 2016, which was before the policy period. And the known loss doctrine applies under Minnesota law, which is a doctrine that has been enforced by the Minnesota Supreme Court and is the law of Minnesota since the early 90s. Is that latter issue raised here, the known loss doctrine? Yes, it's pled in the complaint. And the practical effect of the court's ruling, if there's any award by the appraisal panel, is that the appraisal panel will have considered that there must have been a storm that happened in this policy period, which it cannot. It's not incident. And that the policyholder didn't know about the damage. See, the problem I'm having, and I actually was on the court when Quaid was decided, the problem I'm having is Quaid said that the appraiser can decide legal questions. And I think that there's no question here. You're focusing on one section of the opinion. But Quaid also says this was about causation. And here I think there's no doubt. You would admit that it's about causation. The question is whether it's an incident to coverage. Because either the 2020 storm caused it, the 2014 storm caused it, that's all about causation. Am I wrong about that? I would put it this way, Your Honor. The causation argument that was approved by Quaid and in the circumstances and the facts of Quaid was whether or not something was hail damaged. And that's incident to determining the amount of loss. If it's not hail damage, then we're not going to include it in our estimate. The difference here is that we know that there's hail damage. We're not saying that there wasn't hail damage. There's nothing for the panel to decide. Perhaps. But here's the problem I'm having. In the Quaid case, because you had, you know, three roofs or whatever, the causation may be or, excuse me, the amount of loss may be $2,000 or $3,000. And that's for the panel to decide. I'm just making up numbers. Here it's zero or $3,000. And so you're still talking about the amount of loss. It's all in the way you frame the inquiry. Am I wrong about that? Well, the way you frame the inquiry is dependent upon the facts of each case. And each case, and I think what Quaid. That's what I'm saying. And what Quaid says is that you have to look at the facts of each case. And in this particular case, it's distinguishable from Quaid and it doesn't extend to Quaid because we're not asking for determination that the Hale event, what is Hale event damage. What we're saying is this is a storm that happened well before our policy became effective. Therefore, it's not fortuitous. That is a different issue, completely different issue. But I don't think you answered my question, which is. I'm trying my best. No, no. And I don't mean to beat up on you, but here it's either zero or $3,000 in my hypothetical. It's either you don't owe anything or you owe the whole thing. What the court's decision is is that the panel could come back and say we owe $3,000. And then I have to go to the court and put on evidence. No, we don't owe the $3,000 because the panel shouldn't have decided when the storm happened. And it happened before our effective dates. And also that the insured knew about the loss. So this was a known loss for which they cannot recover. And I'd like to reserve one minute. Given the expertise of the panel members, couldn't the panel members look at it and say, Hey, dude, this damage is eight years old and this damage is two years old. Because don't roofs deteriorate and age over time just like anything else? Doesn't weather have some impact, just ordinary weather, on whether damage is fresh or not fresh? The problem with the question is that the panel's well-equipped to decide what the amount of loss is, what needs to be repaired. Aren't they roofing experts? They're allowed to decide what is repairable or replaceable, what can be. But the problem is that they don't have to put on scientifically valid evidence to address when the storm is. There's no rules of evidence. We can't challenge the opinion, and they don't have to put together an expert report that allows us to cross-examination. So we're deprived of that responsibility. I'm sorry, I think my time is almost up. Mr. Canaris, I'll give you one minute in rebuttal. Okay, thank you. Good morning, Your Honors. Good morning. May it please the Court, Judge Erickson, what you said is exactly right. The appraisal panel is a panel composed of construction experts. This is virtually all I do. I have been on thousands of appraisals. In practice, here's how this works. ACCESS shows up with their reports from 2016 and says, here's where we found the damage on the roofs that predates 2016. Our folks will show up and say, here's the new places on the roof from the new storm. And that's how the appraisal panel will figure out what's new and old damage, in addition to looking at the weathering of the damage. I have to tell you the dangerous precedent that ACCESS is asking you to set, not only to overturn Quaid, basically, but also to say that that question of how much damage is on the roof from a storm is better suited for a jury that we have to train in a week how to see hail damage than it is for a panel of experts. And in this case, there's over 100 years of insurance and adjusting experience on this panel. There is not a better group of people than those folks who will climb up on the roofs themselves. That's what they do. They will go personally inspect it with their own eyes and their hands, and they'll determine, is this new or old hail. Isn't this case, though, different from Quaid and more like Zulfi in the sense that here ACCESS denied that any storm caused any damage during the covered period? It's a lot different from the Zulfi case because the dispositive issue in Zulfi was that the insurer didn't actually establish that there is a dispute about the amount of loss. They could not establish what they disputed about the amount of loss at all. And they tried to demand appraisal after having a trial on those issues. The case in Zulfi is so different. There's a reason the Court of Appeals didn't publish that one. It was weird. But let me get to the second part of your question. This is how dangerous this precedent is. They have said now three or four times, I listen to no more argument, there was no storm during the policy's coverage period. If you look at appendix number 47, their own expert has a weather report that says there's one inch hail on the subject property on May 29th of 2018. That is the same thing our meteorology report said. Both of the experts agree there was a hailstorm on that date. The only dispute is how much damage came from that hailstorm. That's not a coverage question. If the panel goes out there and they find that there's $10,000 of damage from the storm in 2012, I'm not going to walk back into court and ask the court to say that's covered, now you have to pay it. That's still a coverage question. If the panel awards any damages from old storms, that's not covered. They can put that in the line items of their report. That's how the appraisal process works. If there is any amount of loss that isn't attributable to this 2018 storm, we lose. That's fine. That's not a coverage fight. It's a question about how much damage is at the property. Now, this has been the law in Minnesota probably since, I think, 1895 when we adopted the standard fire policy. Since then, the court has consistently upheld this notion that appraisal is highly favored. It's supposed to be plain. It's supposed to be cheap. It's supposed to be speedy. It is supposed to allow parties to an insurance dispute to settle this isolated issue with a panel of construction experts instead of the court. So why are we here now? I noticed that below, you oppose the Rule 54B certification. On appeal, you don't say a word about jurisdiction, which wasn't particularly helpful. My apologies. So why is the 54B certification appropriate? Why don't we wait until there's a final judgment? You know, I don't think that it was appropriate, but the reason it wasn't briefed is because the court accepted it. So if that was a mistake in procedure, that was my fault. The real issue, and I do agree with you, is that appraisal isn't dispositive. There still has to be a final judgment after that. So are we going to have two appeals? Why? Well, you shouldn't because here's practically, here's what's likely to happen. We'll go back down to the district court. Hopefully, that order will be affirmed because it's dead accurate. We'll go to the appraisal process. The appraisal panel will put a number, if any, by the way. They could put $0 on the amount of loss from 2018. If we can't prove any new damage, we lose. If the panel puts a number on that 2018 loss, which their own expert agrees on, it is so disingenuous to say there is no event. Their own expert agrees about that. But if the panel puts some number on it, that number will be effectively our damages number. We no longer have to fight about damages. And then if there's a question whether that was a fortuitous loss, that's a question for the court. If there's a question whether there is any amount of known loss, that is a question for the court. But nobody is asking for money from those older storms. We live in Minnesota. It hails here all the time. Half of the roofs have some amount of hail damage on them. Panels routinely do this. I will tell you candidly, as somebody who handles these, most appraisals include this question. It should be telling to the court that in the hundred years we've been doing it this way, there isn't a single case, not one, that suggests an appraisal panel can't discern between competing causes of loss. The Walnut Creek case in Iowa, I handled that case. There was nine different alleged hail events. But if the appraisal panel awards Judge Strauss's hypothetical $3,000, wouldn't Mr. Canaris be able to go to the district court and say, there's no evidence that there was, notwithstanding his supposed expert's report, but that there was a covered event during the covered period? Yeah, absolutely. It's virtually the same standard as a jury. It's a judgment notwithstanding the verdict. The panel, we call it vacating the award. We would vacate the award. And that's what they would do. They would say, district court, this is outside of the bounds of what they could have potentially decided, and this award should be vacated. That process is rare because, frankly, panels get it right more often than not. But they could vacate the award if that's what happens. And then arguably we're back here again. I just don't understand why. What's the benefit of us deciding this now as opposed to when you get a final judgment? Well, if I'm making their arguments for them, I think that they claim that they have some sort of due process implication here, basically that they can't get a fair shake at determining the amount of loss. I mean, they already have it. They've got their expert report. That will go to the appraisal panel. It always does. They'll make the decision. And I can tell you you're concerned about it coming back. Yeah, that's a real one. In practice, very rarely do any of the appraisal awards get appealed. That's how we know it works, right? You don't see a lot of appraisal awards getting overturned or challenged or appealed because largely the process works exactly as the legislature intended. I'm not joking. We've been doing it this way for 100 years. There's not a single case. Let me ask you, I actually think that the best sentence in Quaid for the other side is not one that was focused on in the argument, which is coverage questions such as whether damage is excluded because it was not caused by wind are legal questions for the court as the case goes forward. So I'm going to change these facts slightly. Sure. Suppose that the dispute here is about whether a woodpecker caused the damage on the roof versus hail. Sure. This sentence would seem to suggest that that is a coverage question for the court, even though that's tied up in questions of causation. What caused it, the woodpecker or the rainstorm? What makes this different from that situation? And you agree with my reading of Quaid that that's what Quaid would suggest that goes to the court. Yeah, and I will tell you again, hearkening back to practice, how that gets fixed is by the appraisal award form. What would happen in practice is the insurance company would say woodpecker damage. I would say hail damage. Appraisal panel, please indicate how much amount of loss is from woodpecker damage and how much amount of loss is from hail damage. So now we've got our damages established in both of those categories. In practice, well, both of them are still covered losses under the policy, so I'm still going to try to win that case. But in practice, that's not a coverage question. It is assisted by the award form, and we'll do that here. I'll stipulate it on record as we're sitting here, that we'll stipulate that the only damage that the panel should find is from that 18th storm. Any other damage shouldn't be on the award form, or we can have a separate line item for any other damage they find outside of that policy period. So you're saying that would go to an appraisal, too, as a practical matter, Quaid notwithstanding? The question of how much damage came from the competing causes of loss, yeah. That frequently goes before the panel, and it's almost like a special verdict form. How much from this amount? How much from this amount? In practice, it works wonderfully. The appraisal process isn't perfect. I'm not here to tell you that it is. But there's a reason that you have never seen an appeal like this ever, because it doesn't make sense. The defense bar agrees. In fact, it was Quaid, Secura was the insurance company. They were the ones that were championing this position. It should be Axis here arguing exactly what I'm arguing. We should put this before an appraisal panel because, frankly, they stand a better chance of winning the case in front of a group of experts than a jury who's going to go, oh, big bad insurance company. I don't know what they're up to, especially when their expert report says there's hail that day. So, frankly, it should be Axis who's advancing the position. I'm almost shocked to have to defend it. Largely the plaintiff and defense bar in this specific property insurance area. We agree. The panel should be doing this. We submit evidence to them all the time about competing causes of loss. So I don't want to get too far in the weeds. Are there any other questions for the court? Otherwise, I don't really have further argument. Hearing none, thank you. Okay. If I could, just in closing, if I may. This process is actually the right thing for both parties. The Minnesota Supreme Court upheld it in 1901 in Christensen v. Norwich, in 1928 in Itasca Paper, again in 1939 in Coveley, and again in 2012 in Quaid. At any point in time at the legislature, because this comes from statute, the Minnesota fire policy, if any time the Minnesota legislature thought that this wasn't working, they could have changed it. The Supreme Court has heard it four or five times. So I would ask this court not to change it. I would uphold the district court's order, remand this matter so it can be decided by an appraisal panel, at least for the amount of loss, and then Mr. Canaris and I can argue about coverage issues after the appraisal takes place. Thank you very much for your time today. Thank you, Mr. Johnson. Thank you. Mr. Canaris, while you're coming up, if your expert admits there was a one-inch hail incident during the covered period, can you realistically be denying that there was at least a storm during the covered period? Well, the report says there was one in the area, and it was based on a weather storm. He's not a meteorologist. It was the roofing expert, and he did that for the purpose of showing that a storm of that size, even if it happened, wouldn't have caused damage to this roof. In fact, there were two roofs that we know that were replaced in 2012-2013 at the location. They had no hail damage, so it's highly unlikely that there would have been. It's impossible, actually, that there would have been a storm in which two storms still have no hail damage and the others dip. So that's why we say that there was no storm that produced hail sufficient of the size to cause damage, and we know that since there were two roofs that were replaced in 2012 and the other ones were from 1996 and much older and had hail damage, we know that that storm could not have produced. And again, I'm glad to hear Council say that he would stipulate to award, because there's nothing in the policy that requires the panel to put anything in its award. All they have to do is put the amount of loss. They don't have to attribute it to a storm or a cause. And I've been involved in many appraisals in my career. I've been doing this for 36-plus years in property insurance, and oftentimes there's a decision made between the two appraisers without an umpire or with the umpire, and it's just a monetary award. They don't have to follow the suggestions of lawyers on how to brief the issues and how to make specific findings. And I really want to go back to the issue about fortuity. As long and longer than there has been case law on appraisal, the issue of the insurance burden to prove a fortuitous loss dates back to the 17th century and the all-perils-of-the-sea policies that started with Lloyds and were adopted by the Minnesota Supreme Court in the 1800s. So that requirement, the burden to prove that there was a fortuitous loss, is a legal question. It's the prerequisite to coverage. And without determining that issue, appraisal and determining damages is unnecessary. Thank you, Your Honors, for your time. Thank you, Counsel, for your appearance and briefing. The case is submitted, and we will issue an opinion in due course. Thank you, Your Honors.